```
                                              FILED
                                        U.S. DISTRICT COURT
         UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LA
           EASTERN DISTRICT OF LOUISIANA
                                        2000 AUG -9 PM 3:14
```

EDWARD LEE JOSEPH, ET AL                           CIVIL ACTION
                                                   LORETTA G. WHYTE
                                                       CLERK

VERSUS                                             NO. 00-0180

RIVER PARISHES CO., INC.                           SECTION "A"

## ORDER AND REASONS

Before the Court is the defendant River Parish Co., Inc.'s ("RIVCO's") Motion for Partial Summary Judgment seeking a determination as a matter of law that it is entitled to set off disability insurance payments made by Guarantee Life Insurance Co. against any award to the plaintiff in this case. The matter was noticed for oral hearing on August 3, 2000, but was deemed submitted on the briefs and documents of record for decision.

**CONTENTIONS OF THE PARTIES**

Defense counsel argument is that the undisputed facts tip the scales in favor of a determination that RIVCO established the disability plan in question as a prophylactic measure against liability, it pays 100% of the premiums, inter alia, and therefore, the collateral source rule does not apply. Simply stated, defendant's position is that it is the intended beneficiary of the Guarantee policy which was purchased for the purpose of defraying the expense of legal liability.

DATE OF ENTRY
AUG - 9 2000

1



Plaintiff filed formal opposition arguing that the disability plan is a fringe benefit, it covers both work related and non-work related injuries and the policy itself contains no language, whatsoever, indicating benefits pursuant to the disability plan should off set potential liability imposed upon RIVCO for tort-based liability. Plaintiff's counsel notes that this case alleges Jones Act negligence and unseaworthiness of the vessel.

In formal reply, RIVCO argues that plaintiff seeks a "wooden" application of the five-factor collateral source test adopted by the Fifth Circuit in Phillips v. Western Co. of North America, 953 F.2d 923 (5th Cir. 1995), and points out that the "ultimate inquiry" remains whether RIVCO established the plan as a "prophylactic measure against liability." See, Davis v. Odeco, Inc., 18 F.3d 1237 (5th Cir. 1994).

**BACKGROUND**

Edward Lee Joseph ("Joseph"), the plaintiff in this case, filed the instant petition for damages pursuant to the Jones Act and under the General Maritime Law alleging a crushing injury to his left hand while making repairs to the 1,000 lb. turbine engine aboard the M/V COMMANDER when one of the chains of the "chain fall" system suspending the engine slipped and allowed the turbine engine to fall. Specifically, the plaintiff alleges Jones Act negligence

(i.e., breach of the standard of care owed a seaman by his employer) in failing to provide a safe place to work, necessary equipment to perform work aboard the vessel, and proper safety clasps on the chain falls. Plaintiff further alleges unseaworthiness of the of the vessel operated by RIVCO in failing to have equipment aboard in proper working condition, failing to have necessary equipment and personnel to perform work aboard the vessel, and lack of a properly trained and competent master and crew. Plaintiff further avers that he is entitled to maintenance and cure benefits.

**ANALYSIS**

Key cases on the collateral source doctrine necessarily set the tone of the Court's inquiry. <u>Tipton v. Socony Mobil Oil Co.</u>, 84 S.Ct. 1 (1963)[1] and <u>Eichel v. New York Central R.R.</u>, 84 S.Ct.

---

[1] In <u>Tipton</u>, the petitioner was a seaman within the coverage of the Jones Act and district court admitted evidence over the objection of plaintiff's counsel that petitioner had accepted benefits under the LHWCA -- that Act being explicitly inapplicable to a member of a crew of any vessel. The jury found that the petitioner was not a seaman within the meaning of the Jones Act. The Fifth Circuit found harmless error. The Supreme Court disagreed with the reviewing court's suggestion that the prejudicial effect of the evidence would be restricted to the issue of liability and thus, did not affect the jury's determination of no liability in the case.

316 (1963)[2] reflect a strong policy against the use of such collateral source evidence in FELA and analogous Jones Act-maritime seaman's cases. As the Fifth Circuit later stated in Phillips, "[t]he jury may feel that awarding damages would overcompensate the plaintiff for his injury ... and may factor this into the liability calculus." 953 F.2d at 930. Simply stated, the major reason for excluding collateral source evidence is the concern that it will infect the jury's determination of liability if they know that the plaintiff has received some compensation.

The Phillips case involved a lawsuit by an oil rig worker for Jones Act negligence and unseaworthiness of the vessel. The district court directed a verdict in favor of the vessel owner dismissing the unseaworthiness claim and entered judgment on the jury verdict in favor of the vessel owner on the Jones Act claim. The Fifth Circuit determined that the error in admitting evidence of possible collateral source payments was not harmless because the

---

[2] In Eichel, the Supreme Court in a per curiam opinion held that in a suit to recover damages under FELA for permanently disabling injury resulting from the railroad's negligence, the district court properly excluded evidence of disability payments. The Court recognized that the receipt of such collateral social insurance benefits involves the substantial likelihood of prejudicial impact. The Eichel Court observed that it has long been recognized that evidence showing the defendant is insured creates a substantial likelihood of misuse.

jury may have improperly included the possibility of double recovery in making its determination of liability. The Phillips court observed that although the evidence of negligence was slim, other Fifth Circuit cases have deemed collateral benefits to have such a prejudicial effect that the court cannot be sure it did not play some role in the jury's deliberations on negligence. The court further noted that the circumstances under which evidence of collateral source benefits has been allowed are narrow -- "[n]ot only must there be 'little likelihood of prejudice and no strong potential for improper use,' the trial judge must give a 'careful qualifying instruction' and there must be a specific purpose (e.g., proof of some other matter) for the evidence." Phillips, 953 F.2d at 930 n.6. Finally and of the utmost importance, the Phillips court noted if the substantive law disallows a set off from the tortfeasor's damages for the plaintiff's collateral benefits, evidence of collateral benefits simply has no relevance in the lawsuit and it is not admissible for that reason alone.

The Fifth Circuit has recognized that in Jones Act and FELA cases the collateral source rule applies to fringe benefits or deferred compensation, but does not apply to "payments made by the employer in order to indemnify itself against liability." Phillips, 953 F.2d at 932. At the outset, the Court notes the

5

cautionary language in <u>Davis</u>[3] along the lines that a myopic fixation on the source of compensation in analyzing the collateral source rule breeds bizarre results. <u>Davis</u>, 18 F.3d at 1244.

As previously mentioned the <u>Phillips</u> court articulated five factors to assist the trial court in distinguishing between fringe benefit plans from benefit plans intended to respond to legal liability, to wit:

> (1) whether the employee contributes to the plan;
>
> (2) whether the benefit plan stems from collective bargaining;
>
> (3) whether the plan covers both work-related and nonwork-related injuries;
>
> (4) whether payments under the plan correlate with the employee's length of service; and
>
> (5) whether the plan contains specific language requiring that the benefits received under the plan be set-off against a judgment adverse to the tortfeasor.

<u>Phillips</u>, 953 F.2d at 932.

As to the disability plan established by RIVCO, the evidence of record is uncontrovertedly to the effect that: (1) the employee payed no portion of the premiums, which are instead paid 100% by RIVCO; (2) the plaintiff and other employees of RIVCO are not union members and no opportunity to engage in collective bargaining

---

[3]<u>Davis v. Odeco, Inc.</u>, 18 F.3d 1237 (5th Cir. 1994).

negotiations for fringe benefits in the way of a disability plan and therefore, RIVCO's disability plan does not stem from any collective bargaining agreement; (3) the disability benefits are payable under the policy to employees whether their disabling injuries are work-related or nonwork-related; (4) there is no correlation between an injured employees' length of service and benefits under the disability plan at issue; and (5) there is no language in the disability plan allowing a set-off for a judgment received in a tort-based lawsuit, however, the calculation of benefits under the plan specifically contemplates a deduction for benefits or awards in the nature of worker's compensation (i.e., non-fault based liability to injured employees).

The fact that the RIVCO pays 100% of the premium weighs against application of the exclusionary collateral source doctrine. However, it is only one of a number of factors the Court must consider in making the determination as to whether the defendant is entitled to set-off disability benefits against <u>any</u> recovery. "'Application of the collateral source rule depends less upon the *source* of the benefit than the *character* of the benefits received.'"[4]  While all of the <u>Phillips'</u> factors are persuasive

---

[4] <u>Global Petrotech, Inc. v. Engelhard Corp.</u>, 58 F.3d 198, 203 (5th Cir. 1995)(citing <u>Haughton v. Blackships, Inc.</u>, 462 F.2d 790

and should be given equal weight, "the ultimate inquiry remains whether the tortfeasor established the plan as a prophylactic measure against liability." Davis, 18 F.3d at 1244.

Here, as in Davis, supra, determining whether the benefits in question are a collateral source presents a close question. Neither the plaintiffs' counsel nor defense counsel has cited precedent which neatly disposes of the issue, under the precise facts and circumstances of this case. This Court's own research into the jurisprudence which touches upon the issues reveals no such precedent.

As noted above, the Plan in question applies to both non-work related and work-related injuries. The fact that disability benefits would be payable in the case of injury/disability which is unrelated to work argues in favor of exempting disability benefits from set off as a fringe benefit. Under the subject disability plan, benefits, albeit not the result of any collective bargaining, are payable regardless of whether or not the disability/sickness resulted from a job-related injury or in the service of the ship.

---

(5th Cir. 1972)).

The policy language at issue is sufficient to enable this Court to determine that the benefits were **not intended to respond to RIVCO's legal liability <u>under the Jones Act</u>** which is a tort-based theory of liability. The fact that the policy specifically contemplates a deduction non-fault based awards (i.e., awards in the nature of worker's compensation) in the calculation determining the amount of the benefit payable and makes no mention of any credit for fault-based award/judgment (i.e., Jones Act negligence and/or unseaworthiness), argues mightily in favor of disallowing set-off for any recovery in that vein.

The Guarantee policy at issue in this case reads under the section which describes the method of determining the "Partial Disability Monthly Benefit" as follows:

> Thus, the amount of the Partial Disability Monthly Benefit will equal the lesser of A or B below:
>
> A.   LOST INCOME: The Insured Employee's Predisability Income, **minus all Other Income Benefits** (including earnings from Partial Disability Employment).
>
> B.   TOTAL DISABILITY MONTHLY BENEFIT otherwise payable:
> 1.   The Insured Employee's Predisability Income, multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); **minus**
> 2.   **Other Income Benefits,** except for earnings from Partial Disability Employment. [emphasis supplied].

See, Defense Exhibit "A," the Disability Policy at p. 18.

"Other Income Benefits" is a policy term defined as follows:

9

>     Any temporary or permanent benefits or awards or which
>     the Insured Employee is eligible under:
>     (a) Workers' or Workmen's Compensation Law;
>     (b) occupational disease law; or
>     (c) any other act or law of like intent.

Id., at p. 19.

After consideration of all of the factors, the arguments of counsel and the evidence submitted, the Court is convinced that the policy does not contemplate a set-off for any jury award in plaintiff's favor on either the Jones Act or the unseaworthiness count. However, in calculating the amount of the disability benefit the policy specifically contemplates a deduction for an award of maintenance which is not a fault-based award or recovery, but rather, a contractual form of compensation which under the general maritime law is owed to seaman who become ill or are injured in the service of the ship.[5]  In the event that the

---

[5] Maintenance and cure is a seaman's right under the general maritime law to receive food and lodging (maintenance) and necessary medical services (cure) if he falls ill while in the service of a vessel. Davis, 18 F.3d at 1245-46. The general rule is that a shipowner is not entitled to set-off against an award for maintenance and cure all monies that a seaman receives. Id., at 1246. Thus, while an injured seaman is not generally entitled to maintenance and cure when he does not incur any expense, the law establishes one exception -- one which forbids a shipowner from escaping his obligation to provide maintenance and cure by referring to monies received by the seaman through his own efforts. Id. In the case at bar, however, the exception is inapplicable because the record is clear that RIVCO paid 100% of the premiums for the disability plan/benefits in question. Moreover, the policy

plaintiff is receiving maintenance payments, such amounts may already be factored into the calculation which determined the disability benefits the plaintiff is receiving currently.  In this particular case, another deduction by way of set-off applied to an award of maintenance, if any, could result in a double deduction, as opposed to a double recovery.

Accordingly and for all of the above and foregoing reasons the Court rules in the particulars noted below.

**IT IS ORDERED** that:

1.  Defendant's Motion for Partial Summary Judgment is DENIED in large part.  Specifically, insofar as the defendant seeks to set

---

language specifically provides for a deduction of an award in the nature of worker's compensation, and the Court believes that maintenance payments fit that description.  Also, the defendant has pled the defense of set-off in this case.

In Davis, albeit *obiter dicta*, the court noted that the district court may have erred in concluding that the defendant Murphy Co. could not deduct disability plan payments from Davis' maintenance award.  The Davis court affirmed the district court, however, on the basis of its finding that Murphy waived its set-off defense by failing to plead it prior to the deadline for filing amendments to the pleadings.

The case at bar presents yet another twist.  The disability plan payments in question may have already have factored in a deduction for maintenance payments in calculating the benefit owed the plaintiff in this case, Joseph.  As discussed later hereinbelow, any set-off in this vein will be addressed by the Court, post-verdict.  It is not an issue for the jury and evidence of any disability benefits payed to Joseph is not relevant to any jury determination and is not admissible at trial on the merits.

off disability benefits payed against any award under Counts One and Two of plaintiffs' Petition for Damages (i.e., Jones Act Negligence and Unseaworthiness the defendant's motion is denied.

2. Insofar as defendant seeks judgment as a matter or law allowing set off against any award in the nature of maintenance past and future, such is REFERRED TO THE MERITS and any award in that vein will be the subject of the parties' proposed forms of judgment with accompanying supporting reasons and will be determined by the Court post-trial.

3. During the trial, in no event shall the defendant make any reference, whatsoever, to any disability plan payments made to the plaintiff. Evidence in this vein is wholly irrelevant to the issues which are to be determined by the jury in this case. Any set off against any award for maintenance shall be determined by the Court post-verdict and addressed, if necessary, in the form of judgment issued at the close of this case.

New Orleans, Louisiana, this <u>9th</u> day of August, 2000.

                                                      */s/ Charles Schwartz, Jr.*
                                                      UNITED STATES DISTRICT JUDGE

cc: all counsel of record