

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW ORLEANS

EDWARD JOSEPH AND      *      CIVIL ACTION NO. 00-0180
JANET JOSEPH      *
     *
VERSUS      *      SECTION "A"
     *
RIVER PARISHES CO., INC.      *      MAGISTRATE 1
     *

**********************************

## PRE-TRIAL ORDER

**NOW INTO COURT**, through undersigned counsel, comes plaintiffs, Edward and Janet

Joseph, and defendant River Parishes Co., Inc., who respectfully submit the following Pre-Trial

Order:

1.     A pre-trial conference was held on August 24, 2000 at 11:00 a.m.

2.     **APPEARANCE OF COUNSEL**

     Stephen B. Murray
     Robert J Diliberto
     909 Poydras St., Suite 2550
     New Orleans, Louisiana 70112-4000
     Attorneys for Plaintiffs

     Bruce D. Burglass, Jr
     Andre C. Gaudin
     Scott O. Gaspard
     Burglass & Tankersley, L.L.C.
     2121 Airline Drive, Suite 203
     Metairie, Louisiana 70001
     Attorneys for defendant, River Parishes Co., Inc. (RIVCO)

3     **DESCRIPTION OF THE PARTIES**

     RIVCO is a corporation authorized to do and doing business within the jurisdiction
     of this Honorable Court. RIVCO was the employer of plaintiff, Edward Lee Joseph,



1



(hereinafter Mr. Joseph is "plaintiff") at the time of the subject December 2, 1999 accident. RIVCO also was and is now the sea charterer of the M/V COMMANDER.

**Plaintiffs:    Edward Joseph and Janet Joseph**

Plaintiffs are Edward Joseph and Janet Joseph (hereinafter referred to as "plaintiffs") who have filed claims alleging Jones Act Negligence, Unseaworthiness of the M/V COMMANDER, and Loss of Consortium

Plaintiff was injured aboard the M/V COMMANDER. He was employed by River Parishes Co., Inc. The M/V COMMANDER is owned by Iberville Interests, L L C and at all pertinent times was leased to River Parishes Co., Inc. under a demise charter agreement

**Insurer:    Gulf Coast Marine, Inc.**

Issued Policy No. GCM 99602 to River Parishes Co., Inc. that insured River Parishes Co., Inc. and the M/V COMMANDER for the liability asserted herein.

RIVCO objects to any reference to or mention of Gulf Coast Marine, Inc. on the basis that it is not a party to this litigation and the deadline for amending the pleadings has passed. Further, Gulf Coast Marine, Inc. is not an insurance company it is a broker.

4.    **JURISDICTION**

Jurisdiction under the Jones Act and General Maritime Law is uncontested. The jurisdiction of this court is raised under 46 U.S.C.A. 688, the Jones Act, the General Maritime Law, and the Laws of the Admiralty.

At all times pertinent hereto, plaintiff, Edward Lee Joseph, was employed by River Parishes Co., Inc. as a deckhand and was engaged in work aboard the M/V COMMANDER. The M/V COMMANDER was engaged in navigable waters of Louisiana subject to the jurisdiction of this Court.

5.    **THE FOLLOWING MOTIONS ARE PENDING**

Defendant is preparing and will shortly file Motions in Limine to strike the illustrations prepared by Trial FX, surgical photographs, x-rays, any other prejudicial photographs, and the "Life Activity Calendar prepared by Robert W. Johnson and Associates.

Plaintiff intends to file a Motion in Limine to Exclude any reference to River Parishes Co., Inc. informal Offer of Employment after the subject incident as well a Motion in Limine to Exclude any reference to garnishment interrogatories contained in plaintiff's personnel file

6.    **SUMMARY OF MATERIAL FACTS SUBMITTED BY PLAINTIFF**

Edward Lee Joseph claims that he was employed by River Parishes Co , Inc. as an engineer and was engaged in work aboard M/V COMMANDER, operated by River Parishes Co., Inc. And that on or about December 2, 1999, he was assisting in making repairs to a 1,000 lb. turbine charger on board the M/V COMMANDER. The "chain fall" system suspended the charger using three chains. When one of the chains slipped, the turbo charger swung over crushing the plaintiff's left hand against the engine. A safety clip was not present on one of the three chains which allowed the chain to become unhooked which allowed the turbine charger to continue its fall crushing the fingers on Mr. Joseph's left hand against the engine Petitioner further alleges that his injuries were caused with no contributory negligence on his part but by the negligence of the defendant, River Parishes Co., Inc. This negligence consisted of, but was not limited to failing to meet the standard of care owed a seaman by his employer under the General Maritime Law and the Jones Act, failing to provide a safe place to work; failing to provide the necessary equipment to perform the work aboard the vessel; and failing to provide proper safety clip on chain falls.

Plaintiff alleges that his injuries were caused by the unseaworthiness of the vessel, operated by the defendant, River Parishes Co , Inc , which unseaworthiness consisted of, but was not limited to failing to have the equipment aboard the vessel in working condition, failing to have the necessary equipment and personal to perform the necessary work aboard the vessel, want of proper safety clips, and want of a properly trained and competent master and crew.

At all pertinent times the M/V COMMANDER was engaged in navigable waters of Louisiana.

**MEDICAL AND DAMAGES**

Mr. Joseph suffered a crushing injury to his hand and subtotal amputation of his long and index fingers, meaning that the fingers were still attached but just dangling. The mutilating injuries to his left hand required immediate revascularization of nerve and tendon repair. Upon initial examination, Mr. Joseph was noted to have a complete amputation and damage of the metacarpophalangeal joint of his left index finger There was loss of complete profundus and superficialis function, loss of both nerves and arteries and significant bone was exposed  On the long finger the joint was dislocated  There were multiple fractures involving the long finger and decreased

vascular compromise. There was also a deep open laceration through the body of the MP joints extending over to the mid-level of the palmer crease. (Dr George's History and Examination dated December 2, 1999).

X-Rays (AP, lateral, and oblique views of the hand) show findings consistent with a complete bony loss of the metacarpal head and the base of the proximal phalanx of the index finger. There was a fracture that extended through the shaft of the proximal phalanx of the index. On the long finger there was a dorsally dislocated MP joint. There was an open fracture of the proximal phalanx of the long finger. Dr. George noted that "patient is going to require urgent surgical intervention, ray amputation of the index, open reduction and internal and possible revascularization of the long finger including tendon and nerve repair.

Dr. George performed 1) microsurgical revascularization of left long finger, 2) microsurgical neurorrhaphy of ulnar digital nerve, left long finger; 3) microsurgical neurorrhaphy of radial digital nerve, left ring finger; 4) repair of flexor digitorum profundus, left long finger; 5) open reduction and fixation of MP fracture dislocation, left long finger; 6) index ray amputation, left hand, 7) extensive debridement of left hand, ring and small finger; 8) repair of soft tissue laceration 4cm, left small; 9) use of C-arm fluroscopic control. (See Operative Report prepared by Dr. E. George dated December 2, 1999). In summary, Dr. George performed a revascularization of the long finger including tendon and nerve repair, replanted his long finger, performed a ray amputation of his index and near complete reconstruction of the ring finger. (Dr. George's notes dated December 9, 1999). On December 23, all of his sutures were removed and was he referred to the Hand Rehabilitation Center to begin gentle range of motion exercises. He continued a significant course of rehabilitation through the Hand rehabilitation Center. In January his two percutaneous pins were removed across the MP joint. (January 6, 2000, Medical Notes).

On January 20, 2000, Dr. George noted that he is quite stiff and that his MP joint is fractured and split somewhat. Dr. George recommended that the therapist work on mainly the PIP joint. On February 17, 2000, Dr. George discussed two options with Mr. Joseph. One option was to have him live with the condition as it was where we will rate his maximum medical improvement and let him learn to function with the hand. The other option would be one of exploring the palm, performing a tenolysis of the tendon and implant arthoplasty. Dr. George noted that Mr. Joseph preferred not proceed with any other surgery and that he would like to accept this function as it is. He was referred back to the hand therapy center for an FCE

According to the AMA guidelines, Mr Joseph has a 36% impairment of the left hand This translates to 32% of the upper extremity and 19% of the total person. Mr. Joseph is restricted to permanent light use of the left hand.

4

Mr. Joseph, as a result of his injuries, suffers depressive moods, pent up anger and irritability, strained interpersonal relationships, verbal temper outbursts, lowered frustration-tolerance, nocturnal insomnia (compounded by his hand problems), relative social isolation and withdrawal, loss of interest in previously enjoyed activities (also compounded by his physical incapacitation), episodic loss of appetite, decreased libido, episodic feelings of hopelessness and helplessness, markedly lowered self-esteem and self-confidence, heightened feelings of criticism and self disparagement, periodic anxiety and generalized nervous tension. (See letter dated March 16, 2000, Robert J. Diliberto, on behalf of Mr. Joseph, requested that Dr. George refer Joseph to a psychiatrist).

Mr. Joseph continues to experience severe physical and emotional pain on a daily basis  His medications include Darvocet, Loratab, Vicodin. His daily activities are limited to watching television, an occasional walk, brief automobile rides, and attending medical appointments. He experiences problems with daily task such as dressing, bathing, and eating. (Edward Deposition at p. 73-74).

In his leisure time, Mr. Joseph enjoyed playing basketball, working out with weights, and working on his boxing skills.  He has not been able to do any of these activities since his injury He finds it depressing to see himself becoming out of shape and his left arm and hand losing strength and ability. He prided himself on his strength and ability to do first class work.  He "always reached out" to help his fellow workers, and his hands were his pride.  He is married and has four children.  He has daughters 24 and 19 years old, another daughter 15 years old and a son 9 years old.  He is concerned for his younger children.  He also has three grandchildren. Ordinarily, Mr. Joseph is more involved with their activities such as fishing, playing basketball, etc  Activities he no longer can do with them.  All of his children and grandchildren live with him and his wife  Without meaning to he frequently will loose patience with all the children

Mr. Joseph's past medical expenses are not at issue and have been paid by his employer. Loss earnings between accident and trial is estimated to be $19,881 00, ($23,388.00 before tax).  Employer meal cost paid instead of wages between accident and trial is $1,182.00.

## FUTURE MEDICALS

Mr. Joseph has a significant injury involving the MP joint and some arthrosis of the PIP joint. Dr. George has recommended that he have further surgery for the long finger which would involve performing a tenolysis of the tendon. The fees associated with this procedure are estimated to be:  (a) $900.00 – surgeon fees, (b) $1,000.00– rehabilitation, at three times per week for six weeks (estimated cost), (c)  hospital costs estimated to be $2,700, and (d) anesthesiologist costs are estimated to be $700.

While future psychiatric counseling appears certain, an expected course of treatment has not yet been determined. It also necessary that plaintiff see an occupational therapist for services to increase upper extremity strength, and facilitate self-care (personal care), and work simplification techniques. It can be anticipated that without psychiatric and rehabilitation services, Mr Joseph's condition will either worsen or take him a significantly longer time to reprogram his life. Also, without these services his chances of returning to the labor market will be significantly decreased

At this time, based upon the findings of the functional capacities evaluation, Mr Joseph's physical capacities are those of personal care and minor daily life activity He is very concerned regarding his future career and all other domains of his life. He has a severe permanent impairment which effects his ability to meet physical demands in all phases of his life, with secondary significant emotional concerns relating to his condition and future.  His level of level of physical capacities is that of personal care and minor daily life activity.  Smith believes that it will be necessary for Mr. Joseph to attempt to redetermine his occupation and to redetermine all aspects of his life. It is Smith's opinion that at this time the job opportunities for Mr. Joseph have been closed.  In the future, at best, the scope of job opportunities open to him will be severely restricted, and possibly remain closed.

Dr. George has assigned work restrictions in which he recommends permanent light duty of the left hand  The functional capacity evaluation conducted by Susan Smith reports that he has essentially no use of his left non-dominant hand for lifting or repetitive reaching and handling activities.  The FCE conducted by Ms Landrieu reveals that Mr. Joseph has very limited use of his left hand and upper extremity due to functional problems and pain problems.  Based on these permanent restrictions, it is Fentress' opinion that Mr. Joseph is disabled from returning to his previous occupation as a deckhand, as well as his previous occupations as a crane operator, cleaner, boiler maker, and construction work.  His inability to use his left hand for repetitive reaching and handling in manual labor activities presents him with a significant vocationally disabling condition

Dr. Melville Wolfson has provided estimates with respect to the diminution of earning capacity and associated economic impairment sustained by Mr. Joseph.  All estimates comply with the rules of damages developed under <u>Monessen v. Morgan</u>.  His after tax loss without return to gainful employment is **$359,249.00, ($426,493.00 before tax).**  Smith and Fentress both believe that his post-injury earning capacity is very limited and at this time closed.  While the scope of job opportunities open to him will be severely restricted, and possibly remain closed, any future earning ability will likely approximate minimum wage.   Using **$10,712.00** as an alternative earnings base representing earnings at $5.15 per hour, forty hours per week, 52 paid weeks per year, loss from trial is **$224,679, ($274,510.00 before tax).**

Meals and lodging also constitute payments in lieu of wages and comprise part of economic impairment  As with other in kind labor costs, meals represent out of pocket employer expenditures. River Parishes estimated its contribution to be $8.33 per day. These cost are estimated to be **$20,743.00** from point of reference. (8.33 per day, or $1,520.00 for 182.5 days per year).[1]  In addition to the employer provided fringes identified in the above paragraphs, Mr. Joseph received $18.00 per day diem  At 280 days per year, the present value of this employer contribution is estimated to be **$71,507.00.**

## SUMMARY OF MATERIAL FACTS SUBMITTED BY RIVER PARISHES CO. INC.
(a) The Accident.

On December 2, 1999, while employed by RIVCO, plaintiff assisted in the removal of a turbine engine on board the M/V COMMANDER  Three chain falls were used during this maneuver to lift the turbo charger and lower it to the deck of the engine room.

Prior to the maneuver, Robert Scott, Sr., the port engineer in charge of the maneuver, gave explicit instructions to everyone present, including plaintiff, not to get under or around the turbo charger when it was suspended.  Mr Scott inspected the chain falls prior to the maneuver. Mr. Scott had previously supervised the removal of the turbo charger from the exact same tug boat on two other occasions and in the exact same manner. No problems occurred during the prior maneuvers.

The chain falls were operated by Daryl Louviere, Chris Fortenberry, and Shannon Santone. Mr. Scott stood in a position in the engine room where he could see all chain fall operators in order to give them signals as to when to pull on the chains. However, plaintiff was not in a position where Mr. Scott could see him.

Plaintiff was not instructed to guide the turbo charger.  Further, Mr. Scott told everyone present, including plaintiff, not to get near the turbo charger when suspended. There was no rush in performing the maneuver.  Even though he was not asked to participate in the maneuver or guide the turbo charger, Mr. Joseph nonetheless did so and used his hands to guide it while it was suspended in the air. Rather than use his hands, plaintiff could have used a strap, rope, tool, or stick to guide the turbo charger which were available to him.

At the time of the accident, the turbo charger was approximately three to four feet from the deck of the engine room and approximately three feet away from the air box. The turbo charger was being lowered to the deck when the accident occurred. While suspended, it is believed that one of the hooks slipped, allowing the turbo charger to

---

[1]The rate of increase is 4.0%

7

swing approximately six inches and strike the air box, where Mr. Joseph had placed his hand on the turbo charger, thus amputating one of his fingers, and damaging his long, middle finger which was surgically reattached.

The aforesaid accident was not caused or contributed to by any fault or neglect on the part of defendant or anyone for whose acts it is or may be responsible, or any unseaworthy condition of the tug, M/V COMMANDER. To the contrary, it was caused as a result of plaintiff's own fault in violation of specific instructions given to him, not any negligence on the part of defendant. Further, if a safety clasp was present on the hook which allegedly slipped, which fact is not certain, it would not have prevented the subject accident

It is the position of defendant that the fault and cause of the accident lies with Mr Joseph for his failure to obey the instructions of Robert Scott, Sr. to keep hands and body away from the turbo charger as it was suspended, and/or failure to use a rope, strap, tool, or a stick to guide the turbo charger as opposed to using his hands

(b) Medicals and Damages

Following the accident, plaintiff was initially transported to St. James Hospital. He was then transported via ambulance to East Jefferson General Hospital.

At East Jefferson General Hospital, he was treated by Dr. Eric R. George, a prominent orthopaedic surgeon, who specializes in hand injuries, who diagnosed him with traumatic amputation index, open fracture, and vascular compromise of the long finger. Plaintiff required surgical intervention, ray amputation of the index, open reduction, and revascularization of the long finger including tendon and nerve repair. Dr. George performed a replant of his long finger, ray amputation of his index, and reconstruction of the long finger. Plaintiff attended physical therapy beginning January 20, 2000 and attended therapy three times weekly

On February 17, 2000, Dr. George discussed two options with Mr Joseph One option was to have him live with the condition as it was and he would rate his maximal medical improvement and let him learn to function with the hand. The other option was one of exploring the palm, performing a tenolysis of the tendon and implant arthoplasty. This would give Mr. Joseph better excursion of the joint as well as a little better motion of the tendon. Despite Dr. George's recommendation of further surgery, Mr. Joseph chose to accept the function as it was. Dr. George referred him to The Hand Therapy Center for an FCE.

8

On March 30, 2000, Dr. George re-evaluated plaintiff and again recommended that he have further surgery on the long finger in order to improve his excursion and glide. However, plaintiff refused. Dr. George noted that, at that juncture, he could return to light use of the left hand.

Plaintiff was re-evaluated by Dr. George on July 6, 2000. Dr. George opined that Mr Joseph would no longer benefit from an MP implant in the long finger due to his good motion there. However, he still requires a tenolysis, a procedure where the tendons that become adherent after reconstruction can be freed from scar tissue allowing for improved motion, particularly at the level of plaintiff's most significant stiffness It would allow him more motion across the PIP joint, giving him a better fist and active grip. Dr. George would also be able to ellipse some of the surrounding scar tissue.

On August 8, 2000, Dr. George issued a supplemental report in which he repeated his belief that plaintiff would benefit from a tenolysis. As it relates to his current permanent, partial impairment, Dr. George opined that his impairment has improved at the metacarpohlangel joint and his current permanent, partial impairment rating of his left hand has improved to 36%. In an optimal situation, if plaintiff undergoes the tenolysis and it is successful with full fisted flexion in the remaining digits, he would expect plaintiff to have some impairment and full fisted flexion with the long finger. An average estimate of impairment would be approximately 23% to 27% impairment of the long finger, which would translate to 5% of the hand. However, Mr Joseph already received an index amputation, which gives him an additional 20% loss of the hand. Therefore, he suspects Mr. Joseph to have optimally a 25% impairment of the hand, down from a previous 42% impairment of the hand This translates to 23% of the upper extremity

Dr. George suspects that with any surgery of the tendon, he would definitely gain some improvement with the finger flexion. He would also hope with some 75% assurance that he would reach a 25% impairment of the hand with the tenolysis. Jennifer Palmer, a vocational rehabilitation expert, performed vocational testing of plaintiff and a labor market survey for jobs available to plaintiff in the Metairie, LaPlace, Garyville, Donaldsonville and other locations in the area. Her June 21, 2000 job search found a security/gate guard position with entry level wages from $7.25 to $12.50 per hour, a crane operator position which pays $15.00 per hour, a service attendant position at Swifty Car Rental in Kenner which pays $6.00 per hour, a delivery driver position for Pizza Hut and Dominoes in the Gonzales area paying between $8.00 and $10.00 per hour, including tips with mileage, and a janitorial position at Pro Engine Sales which pays $6.00 per hour. Dr. George, plaintiff's treating physician, also advised without reservation that plaintiff could surely perform those jobs, as well as ones as a supervisor, pest control technician, forklift operator, equipment operator, truck driver (light), gate guard, cashier, and clerk Accordingly, plaintiff can return to gainful employment, but has chosen not do so

9

It is defendant's position that plaintiff has failed to mitigate his damages  Plaintiff is able to perform light to medium duty work and earn wages in other jobs equal to or greater than his earning at RIVCO in the three years prior to the alleged accident. In fact, the evidence will demonstrate that RIVCO had already decided that plaintiff would return to his former position as a deckhand on March 1, 2000 when the repairs to the M/V ST JOHN were complete. Thus, plaintiff would have returned to his prior work schedule of 7 days on and 7 days off at that time and earned less than he did at the time of the accident.

Dr. Kenneth Boudreaux, consulting economist, performed a past loss wage analysis based on two different annual income amounts for plaintiff.  Income base (1) $17,337.50 is based on plaintiff returning to his normal shift of seven days on/seven days off as a deckhand, which would have occurred on March 1, 2000. Income base (2) $21,401.80 is derived from an average of plaintiff's annual income from 1997/1999 accident date.  This average overstates the influence of the more remunerative work schedule because the average assumes that such work would reoccur one in three years.

At the $17,337 50 income base, plaintiff has a $15,266 64 past loss  At the $9.00/hour level, he would have no future lost wage claim. Plaintiff readily has jobs available to him which he is capable of performing and which pay in excess of $9.00/hour.

At the higher three year average income base of $21,.401 80, plaintiff's past loss would only be $16,606.46. His future loss, if employed at the $9.00/hour level is $22,486.11.  At the $12.50/hour level, he has no future loss. Accordingly, his future loss, if any, is minimal.

7    **UNCONTESTED MATERIAL FACTS**

    a.    On or about December 2, 1999, plaintiff was employed by RIVCO.

    b.    Plaintiff, Edward Lee Joseph was employed River Parishes Co. Inc , and he was in the course and scope of his employment as a Jones Act Seaman when the incident that forms the subject matter of this action occurred

    c.    At all pertinent times the M/V COMMANDER was engaged in navigable waters of Louisiana.

8    **THE CONTESTED ISSUES OF FACT ARE:**

    a.    Whether Plaintiff's injuries were caused by the unseaworthiness of the M/V COMMANDER, operated by the defendant, River Parishes Co., Inc    Plaintiff

10

alleges that a safety clip was not present on one of the three chains suspending the turbo charger which allowed that chain to become unhooked which in turn allowed the turbine charger to continue its fall crushing the fingers on Mr. Joseph's left hand against the engine. Two of the three chains in the "chain fall" system had safety clips. A properly trained and competent master and crew would not have allowed said maneuver to commence without the necessary equipment aboard and in proper working condition. The Chief Port Engineer and Engineer assigned to the vessel assisted in selecting and placing the "chain fall" system into operation

b.    Whether Edward Joseph's injuries were caused by the negligence of the defendant, River Parishes Co., Inc. Plaintiff claims that River Parishes Co , Inc 's negligence consisted of, but was not limited to failing to provide a safe place to work , failing to provide the necessary equipment to remove the turbo charger aboard the M/V COMMANDER, and failing to provide a proper safety clip on the "chain fall" system that was being used to remove the turbo charger. The "chain fall" system was already in place when the plaintiff boarded the vessel to assist in removing the charger Plaintiff did not assist nor was he present in selecting the chains to be used to remove the turbo charger. Plaintiff did not assist nor was he present when the "chain fall" system was connected to the turbo charger.

c.    The nature and extent of plaintiff's injuries, and associated disability. Plaintiff suffered a severe crushing injuries to his left hand.    The damage to Mr. Joseph's hand was considerable and, ultimately, the index finger on his left hand was amputated with his long finger being replanted. Extensive surgery was done on his hand in an attempt to maximize Mr. Joseph's recovery. Not only were these procedures very painful physically, but traumatic as well, for Mr. Joseph had to cope with the loss of a limb Several months of therapy designed to return Mr. Joseph as close as possible to his pre-accident capabilities ensued, but ultimately rehabilitation failed in this goal. As a result of the injury, Mr Joseph was unable to work during his period of rehabilitation, as well as afterwards, for Mr. Joseph was and is unable to perform his requisite duties as a deckhand due to his permanently diminished physical state   Mr Joseph is now seeking compensation for his injuries from Defendant through this action   Dr. George, on August 8, 2000, stated that according to AMA guidelines plaintiff has a 36% impairment of the left hand. This translates to 32% of the upper extremity and 19% of the total person. Dr. George believes that plaintiff will require a tenolysis and a procedure to ellipse some of the surrounding scar tissue during which plaintiff will require six weeks of therapy

d.    Whether or not the hook on a chain fall that does not have a safety clasp on it constitutes an unseaworthy condition;

e.    The nature, extent, and causation of Mr Joseph's injuries, disability and past and future wage loss, if any;

11

f.   The amount of damages, if any, that Mr. Joseph is entitled to recover;

g.   The nature and extent of Janet Joseph's injuries, if any, and whether she is entitled to damages;

h.   Whether or not Janet Joseph has suffered a loss of consortium and whether or not the December 2, 1999 accident was the cause of that loss;

i.   Whether or not Mr. Joseph has suffered any economic injuries as a result of the December 2, 1999 accident;

j.   Whether or not Mr. Joseph was negligent by failure to obey the instructions of Robert Scott, Sr. to keep his hands and body away from the turbo charger as it was suspended, and/or failure to use a rope, strap, tool, or stick to guide the turbo charger as opposed to using his hands;

k.   Whether any future treatment or surgery is necessary;

l.   Whether there is need for a tenolysis surgical procedure and whether plaintiff's failure to undergo same constitutes a failure to mitigate his damages;

m.   Whether plaintiffs have suffered any loss of wage or diminished earning capacity following the accident;

n.   Plaintiff's employability in jobs that he is able to perform including, but not limited to, possible positions as a supervisor, pest control technician, forklift operator, equipment operator, truck driver (light), gate guard, cashier, janitor, and clerk;

o.   Whether the M/V COMMANDER and its appurtenances, were reasonably fit for their intended purposes;

p.   Whether the M/V COMMANDER or any of its appurtenances were unseaworthy and, if so, whether that condition caused or contributed to plaintiff's accident;

q.   Whether any act or omission on the part of defendant or its employees caused or contributed to the alleged accident in suit;

r.   The nature and extent of plaintiff's job duties and work schedule for RIVCO;

s.   Plaintiff's future job duties and schedule of plaintiff at RIVCO;

t.   Whether or not plaintiff would have returned to his position as a deckhand on March 1, 2000 and to his schedule of 7 days on and 7 days off;

12

u.    Plaintiff's present earning capacity, as well as plaintiff's earning capacity prior to the accident;

v.    Whether plaintiff was a deckhand and/or engineer at the time of the subject accident;

w.    All those implicit in the statement of Contested Issues of Law; and

x.    Whether Gulf Coast Marine, Inc. issued Policy No. GCM 99602 to River Parishes Co., Inc. that insured River Parishes Co., Inc. and the M/V COMMANDER for the liability asserted herein.

y.    Whether the M/V COMMANDER was operated by River Parishes Co., Inc and is insured under the above identified policy for the liability asserted herein.

z.    Any and all other acts of negligence which will be shown at the trial of this matter (Defendant objects to this contested issue of fact as being vague, ambiguous, and prohibited by the requirements of the court's Pre-Trial Notice.

9.    **<u>CONTESTED ISSUES OF LAW ARE:</u>**

a.    Whether plaintiff's injuries were caused by the negligence of the defendant, River Parishes Co., Inc.;

b.    Whether the River Parishes failed to meet the standard of care owed a seaman by his employer under the General Maritime Law and the Jones Act;

c.    Whether the River Parishes failed to provide a safe place to work;

d.    Whether the River Parishes failed to provide the necessary equipment to perform the work aboard the vessel;

e.    Whether the River Parishes failed to provide a safety clip on a chain fall used for removing the turbine charger aboard the M/V COMMANDER,

f    Whether any act or omission on the part of defendant caused or in any way contributed to the plaintiff's alleged accident,

g    Whether plaintiff's negligence, or sole fault, caused or contributed to his own accident and injuries, if any, by his failure to obey the instructions of Robert Scott, Sr. to keep his hands and body away from the turbo charger as it was suspended, and/or failure to use a rope, strap, tool, or stick to guide the turbo charger as opposed to using his

hands;

h.   Whether RIVCO is entitled to a set-off for any and all maintenance and cure it has paid to plaintiff.

i.   Whether the plaintiff has complied with his legal duty to mitigate his damages through his failure to return to work or undergo recommended medical treatment;

j.   Whether or not any negligence of RIVCO and/or unseaworthiness of the M/V COMMANDER either caused or contributed to the accident resulting in injuries;

k.   Whether or not RIVCO was negligent and/or the M/V COMMANDER unseaworthy in a manner that caused or contributed to plaintiff's injury

l.   Whether Mrs. Joseph is entitled to a loss of consortium award; and

m.   All those expressed or implied in the foregoing Statement of Facts.

## 10. **EXHIBITS**

**RIVCO** submits that it may introduce the following exhibits at the trial of this matter:

a.   Social Security Administration and W-2 forms from 1995-1999;

b.   Depositions of any witness not available for trial and attachments;

c.   Any and all depositions and attachments thereto taken in this matter for impeachment purposes, if necessary;

d.   Any exhibit listed and/or introduced by any other party;

e.   Any and all pleadings including, but not limited to, Interrogatories and Request for Production of Documents and responses thereto;

f.   Photographs taken of the site of the accident and the subject chain fall;

## DEFENDANT'S EXHIBITS THAT PLAINTIFFS' OBJECT TO:

A.   Any and all employment records received from Edward Lee Joseph's past employers including, but not limited to, the records received from Dr. Wallace Rubin;

Plaintiffs object in that designation is vague, overbroad and such information has not been previously provided or identified. in that "employment records" are not identified and further may not have been identified and/or provided in response to discovery

B.    Edward Lee Joseph's personnel file at RIVCO;

Plaintiffs object to any reference to garnishment interrogatories contained in plaintiff's personnel file. It is irrelevant and prejudicial

C.    Any text, treatise, model etc necessary for examination of witnesses and/or rebuttal;

Plaintiffs object on the basis that it was not previously cited on any exhibit list nor previously disclosed prior to discovery deadline. Plaintiffs further object to authenticity and admissibility in that "Any text, treatise, model etc. necessary for examination of witnesses" is vague, overbroad and such information has not been previously provided or identified

D.    March 23, 2000 Upper Extremity Functional Capacity Evaluation performed on Edward Lee Joseph by The Hand Rehabilitation Center, Inc.;

Plaintiffs object to authenticity and admissibility

E    Plaintiff's earnings records;

Plaintiffs object to authenticity and admissibility in that "earning records"are not identified

F    July 6, 2000 report of Dr Eric R. George;

Plaintiffs object to authenticity and admissibility.

G.    August 8, 2000 report of Dr. Eric R. George;

Plaintiffs object to authenticity and admissibility.

**_NOTE:_** Defendant plans to make a proffer of the following evidence outside the presence of the jury and on the record of the following exhibits for purpose of an appeal of this court's denial of defendant's Motion for Partial Summary Judgment

A.    Attending physician's statement executed by Dr. Eric R George for July 26, 2000;

Plaintiffs object to authenticity and admissibility

B.    Insured's supplementary statement executed by Edward Joseph on July 7, 2000,

Plaintiffs object to authenticity and admissibility.

C.   A certified copy of Guaranty's Life Insurance Company's disability policy;

D.   May 7, 1996 letter of Kyle C. Wild to Rubin Warren, including Kyle Wild's handwritten notes pertaining to his conversations with Jeffrey Beech with Affidavit authenticating same;

Plaintiffs object to authenticity and admissibility.

E.   May 17, 2000 fax correspondence from Tom Sova to Jeffrey Beech with Affidavit authenticating same;

Plaintiffs object to authenticity and admissibility

F    October 8, 1998 letter to Randy A. Reuther to Maria Kinney with Affidavit authenticating same;

Plaintiffs object to authenticity and admissibility

G.   December 20, 1999 letter to Jeffrey D. Beech to Pat Aucoin with Affidavit authenticating same,

Plaintiffs object to authenticity and admissibility.

H.   Affidavit of Kyle C. Wild prepared June 27, 2000;

Plaintiffs object to authenticity and admissibility.

I    Affidavit of Albert Gravois prepared June 30, 2000;

Plaintiffs objection to authenticity and admissibility.

J    Affidavit of Jeffrey Beech submitted with Motion for Partial Summary Judgment as Exhibit D.

Plaintiffs object to authenticity and admissibility

K.   Affidavit of Randall A. Reuther prepared on June 29, 2000;

Plaintiffs object to authenticity and admissibility.

L.   Affidavit of Tom E. Sova prepared July 6, 2000;

16

Plaintiffs object to authenticity and admissibility.

M.    Anticipated testimony from Albert Gravois regarding facts and circumstances surrounding RIVCO's purchase of long term disability insurance policy;

Plaintiffs object to admissibility on grounds that it is hearsay

N.    Anticipated testimony from Randall A. Ruether regarding facts and circumstances surrounding RIVCO's purchase of long term disability insurance policy;

Plaintiffs object to admissibility on grounds that it is hearsay

O.    Anticipated testimony of Tom Sova regarding facts and circumstances surrounding RIVCO's purchase of long term disability insurance policy;

Plaintiffs object to admissibility on grounds that it is hearsay.

P.    Anticipated testimony of Kyle Wild regarding facts and circumstances surrounding RIVCO's purchase of long term disability insurance policy;

Plaintiffs object to admissibility on grounds that it is hearsay.

Q.    Anticipated testimony of Jeffrey D. Beech regarding facts and circumstances surrounding RIVCO's purchase of long term disability insurance policy; and

Plaintiffs object to admissibility on grounds that it is hearsay.

R.    RIVCO's Motion for Partial Summary Judgment, with attachments


**PLAINTIFFS' EXHIBITS:**

Certified copies of medical records and bills of:

a.    Acadian Ambulance & Air Med Services
      P. O. Box 92970
      Lafayette, Louisiana  70509-2970

b.    St. James Parish Hospital
      2471 Louisiana Ave.
      Lutcher, Louisiana 70071

17

c.    East Jefferson General Hospital
      4200 Houma Blvd.
      Metairie, Louisiana  70006

d.    The Hand Rehabilitation Center, Inc
      3506 Severn Ave.
      Metairie, Louisiana 70002

e.    Hand Surgical Associates, Ltd.
      Dr. Eric George
      4300 Houma Blvd. Suite 301
      Metairie, la. 70006

The above identified records and bills are offered to establish injuries and damage. Furthermore, plaintiff reserves the right to add any health-care providers who may treat plaintiff in the future;

Defendant objects to any reference to medical bills by plaintiff as being irrelevant because they have been fully paid by RIVCO pursuant to its maintenance and cure obligation to plaintiff. Defendant further objects to admission of any medical bills to prove defendant's liability for plaintiff's injuries. Defendant further objects to any surgical photographs taken of plaintiff's hand or any photographs depicting blood. The probative value of any and all such photographs is substantially outweighed by the unduly prejudicial effect they would have on defendant.

f.    Any and all medical records, including x-rays and/or bills regarding treatment of plaintiff for injuries sustained on the date of, or subsequent to the date of the subject accident;

Defendant objects to any reference to medical bills by plaintiff as being irrelevant because they have been fully paid by RIVCO pursuant to its maintenance and cure obligation to plaintiff. Defendant further objects to admission of any medical bills to prove defendant's liability for plaintiff's injuries. Defendant further objects to any surgical photographs taken of plaintiff's hand or any photographs depicting blood. The probative value of any and all such photographs is substantially outweighed by the unduly prejudicial effect they would have on defendant. Defendant further objects to the use of any x-rays on the grounds that they have not previously been provided in response to discovery nor have they been previously identified as exhibits on plaintiffs' Exhibit List.

g.    Plaintiff's W-2 Forms and payment records from River Parishes Co , Inc.
      Offered to establish income,

h.    River Parishes Company, Inc.  Safety Policies and Procedures Manual
      Offered to establish company policy and procedure;

18

i.    Deposition of Jeff Beech as corporate designee of River Parishes (All or part of this deposition will be offered for impeachment purposes);

j.    Deposition of Robert Scott, Sr. (All or part of this deposition will be offered for impeachment purposes),

k    Deposition of Robert Scott, Jr. (All or part of this deposition will be offered for impeachment purposes);

l.    Vaughn Ehrman (All or part of this deposition will be offered for impeachment purposes);

m.    Randall Legg ( All or part of this deposition will be offered for impeachment purposes);

n.    Julio Sanchez (All or part of this deposition will be offered for impeachment purposes),

o.    Daryl Louviere (All or part of this deposition will be offered for impeachment purposes);

p.    Shannon Santone (All or part of this deposition will be offered for impeachment purposes);

q.    Weekly Engineers Fitness Report;

r.    "Chain Fall System" that was identified in discovery as the chain that "slipped" and is currently being kept at the corporate offices of River Parishes Co. Inc ;

s.    Photographs of the "Chain Fall System";

t.    Any pleadings that have been filed in this case;

u.    Any and all evidence that has been produced in response to any discovery;

v.    Depositions of any witness not available for trial and attachments; and

w.    Plaintiff hereby incorporates and adds any exhibits listed by any other party to this action in their exhibit list, if not previously listed above

## PLAINTIFFS' EXHIBITS THAT DEFENDANT OBJECTS TO:

A.    Any and all photographs and video tapes that have been taken of the accident scene,

Defendant objects to any photographs depicting blood on the basis that these photographs are unfairly prejudicial and any probative value is substantially outweighed.

B.    Life Activity Calendar prepared by Robert W. Johnson & Associates

19

Offered to establish the change in Mr. Joseph's life post incident as an element of damages;

Defendant objects to the authenticity and admissibility of the Life Activity Calendar prepared by Robert W. Johnson & Associates. This chart is irrelevant, misleading, and will confuse the issues before the jury rather than assist the jury in determining a fact at issue. Defendant further objects in that the probative value, if any, is substantially outweighed by its prejudicial effect. Further, the chart is hearsay and no foundation has been made for same.

C.   Medical Illustration Exhibit prepared by Trial FX offered to establish post-accident condition of right hand with subsequent amputation of index finger;

Defendants objects to this exhibit as being unfairly prejudicial and inflammatory and any probative value is substantially outweighed. Defendant further objects that this exhibits is unnecessary and has not been authenticated.

D.   Defendant objects to any reference to the Gulf Coast Marine, Inc because it is not relevant since gulf Coast is not a party to this lawsuit. Defendant further objects that this policy is immaterial and confuses the issues.

E.   Plaintiff's Time Slips
Offered to establish work history;
Defendant objects on the basis that they are incomplete, were only provided yesterday, and are misleading.

F    Employment Records of Edward Joseph;
Defendant objects on the grounds that the designation is vague, overbroad and such information has not previously been noted and may not have been identified and/or provided in response to discovery.

11.  **DEPOSITIONS TO BE OFFERED:**

It is not anticipated that any party will offer deposition testimony into evidence at this time. Defendant, RIVCO, and plaintiffs, reserve the right to use in whole or in part any deposition for impeachment purposes or for any other purposes allowed under the Federal Rules of Civil Procedure.

12.  **CHARTS, GRAPHS, MODELS, ETC.:**
Counsel may use the blackboard and refer to enlargements of exhibits, charts, and schematics during opening statements, examination of witnesses, and closing arguments.

13.    **PLAINTIFFS' WITNESS LIST:**
Plaintiffs' witness list was timely filed in accordance with this court's scheduling order

Will Call Witness List:

a.    Edward Lee Joseph;
Facts and circumstances surrounding the accident, and pre-accident events, injuries, and damages.

b.    Janet M. Joseph;
Present address:                2672 Courseault
                                St. James Parish 70071
Testimony concerning her husband's life before and after the incident which is the subject matter of this suit. Mrs. Joseph's testimony will be from a wife's perspective. She will testify concerning her relationship with her husband and as to the changes in their relationship as a result of this incident. She will further testify about other matters contained in her deposition. The testimony of the witness will include, but will not be limited to the above specified areas.

c.    Natasha L. Joseph;
Present address:                2672 Courseault
                                St. James Parish 70071
Testimony concerning her father's life before and after the incident which is the subject matter of this suit. She will further testify about her father's living arrangements, physical condition, and other matters associated with his injuries. Her testimony will be from a daughter's perspective. She will testify concerning her relationship with her father and as to the changes in that relationship as a result of this incident The testimony of the witness will include, but will not be limited to the above specified areas.

d.    Keith Jackson;
Present address:                2680 Courseault
                                St. James Parish 70071
Testimony concerning Mr. Joseph's life before and after the incident which is the subject matter of this suit and how their relationship has changed as a result of Mr. Joseph's injuries. (i.e. activities they did together before Mr. Joseph's injuries which they can not do now because of his physical limitations) Testimony will be from a friend's perspective. The testimony of the witness will include, but will not be limited to the above specified areas.

e.    Eric R George, M.D.;
(Treating physician) expert witness concerning his examination of plaintiff, his diagnosis, surgery, treatment, recommendations and his prognosis for the future,

Address: 4300 Houma Boulevard, Suite 301, Metairie, Louisiana 70006

f      A representative of Acadian Ambulance & Air Med Services;
To authenticate medical records.

g.     A representative of The Hand Rehabilitation Center, Inc.;
To authenticate medical records.

h     Jeff Beech, as a representative of River Parishes Co., Inc.;
Facts and circumstances surrounding Mr. Joseph's past and future employment, the
accident, pre and post-accident events, injuries, and  damages;
Address: Post Office Box W, 2049 South Railroad Street, Lutcher, Louisiana 70071


i.     Julio Sanchez
Facts and circumstances surrounding Mr. Joseph's past and future employment, the
accident, pre and post-accident events, injuries, and damages;
Address: 600 Deerfield Road, Apartment 908, Terrytown, Louisiana


j.     Randall Legg
Facts and circumstances surrounding Mr. Joseph's past and future employment, the
accident, pre and post-accident events, injuries, and damages;
Address: 44444 Melancon Road #24, Sarento, Louisiana 70778


k.     Robert Scott, Sr.
Facts and circumstances surrounding Mr. Joseph's past and future employment, the
accident, pre and post-accident events, injuries, and damages;
Address: 406 20th Street, Apartment 29, Gretna, Louisiana 70053


l.     Daryl Louviere
Facts and circumstances surrounding Mr. Joseph's past and future employment, the
accident, pre and post-accident events, injuries, and damages;
Address: 108 13th Street, Bridge City, Louisiana 70094


m.     Shannon Santone
Facts and circumstances surrounding Mr. Joseph's past and future employment, the
accident, pre and post-accident events, injuries, and damages;
Address: 14559 Harry Savoi Road, St. Amant, Louisiana


n.     Robert Scott, Jr.
Facts and circumstances surrounding Mr. Joseph's past and future employment, the
accident, pre and post-accident events, injuries, and damages;
Address: 212 8th Street, Bridge City, Louisiana 70094

o.    Vaughn Ehrman
Facts and circumstances surrounding Mr. Joseph's past and future employment, the accident, pre and post-accident events, injuries, and damages;

p.    Melville Z. Wolfson, Ph.D
Intend to qualify as an expert in Forensic Economics
Address:  820 O'Keefe Avenue, New Orleans, Louisiana 70113
Will testify regarding economic damages suffered by Edward Joseph as a result of his injuries as set out in his report.

q.    Nathaniel Fentress
Rehabilitation Counselor
Intend to qualify as an expert in vocational rehabilitation
Address:   330 Julia Street, New Orleans, Louisiana 70130
Will testify to circumstances of Edward Joseph's injuries and its affect on his employability.

r.    Susan L. Smith, Ma, LOTR, FAOTA
Will testify regarding Functional Capacity Evaluation performed on plaintiff.
Professional Occupational Therapy Services
Address:  P.O. Box 8532, Metairie, Louisiana 70011

s.    Plaintiff reserves his right to call whatever rebuttal witnesses as necessary to meet his burden of proof;

t.    Any witness necessary to authenticate documents sought to be introduced into evidence; and

u.    Plaintiffs reserves the right to supplement this witness list upon adequate notice to this Honorable Court and any and all parties involved.

**Plaintiff's May Call Witness List:**

a.    Sullivan Michael;
      Present address·              Lionel Washington Street, Lutcher
      Testimony concerning Mr. Joseph's life before and after the incident which is the subject matter of this suit and how their relationship has changed as a result of Mr. Joseph's injuries. Testimony will be from a friend's perspective. (i.e activities they did together before Mr. Joseph's injuries which they can not do now because of his physical limitations). The testimony of the witness will include, but will not be limited to the above specified areas.

23

    b.       Jack Raney;
               Present address.          Lionel Washington Street, Lutcher
Testimony concerning Mr. Joseph's life before and after the incident which is the subject matter of this suit and how their relationship has changed as a result of Mr. Joseph's.(i.e. activities they did together before Mr. Joseph's injuries which they can not do now because of his physical limitations). Testimony will be from a friend's perspective. The testimony of the witness will include, but will not be limited to the above specified areas.

    c.       Osborne Kelson;
               Present address:         Gramercy, Louisiana
Testimony concerning Mr. Joseph's life before and after the incident which is the subject matter of this suit and how their relationship has changed as a result of Mr. Joseph's. Testimony will be from a friend's perspective. (i.e activities they did together before Mr. Joseph's injuries which they can not do now because of his physical limitations). The testimony of the witness will include, but will not be limited to the above specified areas

## DEFENDANT'S WITNESS LIST:

Defendant's witness list was timely filed in accordance with this court's scheduling order

RIVCO submits that it may call the following witnesses at the trial of this matter

    a.       Edward Lee Joseph - (under cross-examination) facts and circumstances surrounding the accident, and pre-accident events, injuries, and damages;

    b.       Janet Joseph - (under cross-examination) facts and circumstances surrounding the accident, and pre-accident events, injuries, and damages;

    c.       Robert Scott, Sr.- facts and circumstances surrounding the accident, and pre accident events, injuries, and damages including, but not limited to, testimony regarding the safety meeting before the maneuver, safety issues, chain fall maneuvers, and plaintiff's employment at RIVCO;
Address: 406 20th Street, Apartment 29, Gretna, Louisiana 70053

    d.       Shannon Santone - facts and circumstances surrounding the accident, and pre accident events, injuries, and damages including, but not limited to, testimony regarding the safety meeting before the maneuver, safety issues, chain fall maneuvers, and plaintiff's employment at RIVCO;
Address: 14559 Harry Savoi Road, St. Amant, Louisiana

e.      Daryl Louviere - facts and circumstances surrounding the accident, and pre-accident events, injuries, and damages including, but not limited to, testimony regarding the safety meeting before the maneuver, safety issues, chain fall maneuvers, and plaintiff's employment at RIVCO;

Address: 108 13th Street, Bridge City, Louisiana 70094

f.      Julio Sanchez - facts and circumstances surrounding the accident, and pre-accident events, injuries, and damages including, but not limited to, testimony regarding the safety meeting before the maneuver, safety issues, chain fall maneuvers, and plaintiff's employment at RIVCO;

Address: 600 Deerfield Road, Apartment 908, Terrytown, Louisiana

g.      Randall Legg - facts and circumstances surrounding the accident, and pre-accident events, injuries, and damages including, but not limited to, testimony regarding the safety meeting before the maneuver, safety issues, chain fall maneuvers, and plaintiff's employment at RIVCO;

Address: 44444 Melancon Road #24, Sarento, Louisiana 70778

h.      Robert Scott, Jr. - facts and circumstances surrounding the accident, and pre and post-accident events, injuries, damages including, but not limited to, testimony regarding the safety meeting before the maneuver, safety issues, chain fall maneuvers, and plaintiff's employment at RIVCO;

Address: 212 8th Street, Bridge City, Louisiana 70094

i.      Vaughn Ehrman - facts and circumstances surrounding the accident, and pre and post-accident events, injuries, damages and safety procedures;

Address: N/A

j.      Jeffrey D. Beech - and/or another representative of River Parishes Co., Inc. - facts and circumstances surrounding Mr Joseph's past and future employment, the accident, pre and post-accident events, injuries, and damages;

Address: Post Office Box W, 2049 South Railroad Street, Lutcher, Louisiana 70071

k.      Dr. Eric George - (treating physician) expert witness concerning his examination of plaintiff, his diagnosis, surgery, treatment, recommendations and his prognosis for the future;

Address: 4300 Houma Boulevard, Suite 301, Metairie, Louisiana 70006

l.      Any health-care providers who have treated plaintiff at any time;

m.      Jennifer Palmer - vocational evaluation of plaintiff and results of job market survey;

Address: 4500 Clearview Parkway, Suite 100, Metairie, Louisiana 70006

n.    Dr. Ken Boudreaux and/or Dan Cliffe - economic damages, or lack thereof, suffered by plaintiff;
Address: 1424 Bordeaux Street, New Orleans, Louisiana 70115

o    Any witness necessary to authenticate documents sought to be introduced into evidence; and

p.    Any witness listed and/or called by any other party.

q.    Defendant reserves the right to supplement this Witness List upon adequate notice to this Honorable Court and to all parties.

r.    Defendant reserves the right to call whatever rebuttal witnesses necessary.

DEFENDANT'S WITNESSES THAT PLAINTIFFS OBJECT TO:

A.    Kerry W. Landrieu - (The Hand Rehabilitation Center, Inc.) regarding Upper Extremity Functional Capacity Evaluation performed on plaintiff;
Address: 4300 Houma Boulevard, Suite 307, Metairie, Louisiana 70006

Plaintiffs object on the grounds that defendant has not previously identified Kerry W. Landrieu on its witness list.

RIVCO submits that it will call the following witnesses at the trial of this matter:

a.    Dr Eric R George - (treating physician) expert witness concerning his examination of plaintiff, his diagnosis, surgery, treatment, recommendations, and his prognosis for the future;

b.    Dr Ken Boudreaux and/or Dan Cliffe - intend to qualify as an expert in forensic economics.
       -    economic damages, or lack thereof, suffered by plaintiff; and

c.    Jennifer Palmer - intend to qualify as an expert in vocational rehabilitation.
       -    vocational evaluation of plaintiff and results of job market survey.

14.    **JURY TRIAL**

This matter will be tried by a jury. Proposed jury instructions, suggested jury interrogatory forms, and any special questions that the court will ask perspective jurors on voir dire will be delivered to the court and opposing counsel no later than one week prior to the trial date, unless specifically to the contrary is granted by the court Each party will file with the court

a separate memorandum on contentions of fact and law at least one week prior to trial.

15. The issue of liability will not be tried separately from that of quantum.

16. RIVCO suggests that a settlement conference before the Magistrate may be fruitful.

17. Trial shall commence on September 11, 2000, at 10:00 a.m. Counsel estimate that the length of the trial will be three (3) days.

18. This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19. Plaintiffs and defendant have discussed settlement without success.

Date: ___8/23/2000___              APPROVED: _____
                                          Stephen B. Murray
                                          Robert J. Diliberto
                                          **Attorneys for Plaintiffs**


Date: ___8/22/2000___              APPROVED: _____
                                          Bruce D. Burglass, Jr.
                                          Andre C. Gaudin
                                          Scott O. Gaspard
                                          **Attorneys for Defendant**


                    _____
                    **UNITED STATES DISTRICT JUDGE**

27